**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SALVATORE MATTIACCIO, *et al.*,<br><br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM SCHARFENBERG, *et al.*<br><br><br>Defendants. | Civil Action No. 23-23037 (GC) (TJB)<br><br>**OPINION** |

**CASTNER, District Judge**

  **THIS MATTER** comes before the Court upon two Motions to Dismiss the Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). Defendant Dave Scalabrini filed a Motion to Dismiss on January 29, 2024. (ECF No. 8.) Defendants Bradley Billhimer, Joseph Coronato, Christopher Heisler, Mark Malinowski, William Scharfenberg, Stephen Shadiack, and the Ocean County Prosecutor's Office (collectively, the Remaining Moving Defendants) filed a joint Motion to Dismiss on July 31, 2024. (ECF No. 37.) Plaintiffs opposed both Motions. (ECF Nos. 11, 41.) All Defendants replied. (ECF Nos. 12, 42.) The Court requested supplemental briefing, which was filed on March 12 and 13, 2025. (ECF Nos. 49, 50.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant Scalabrini's Motion (ECF No. 8) is **GRANTED**, and the Remaining Moving Defendants' Motion (ECF No. 37) is **GRANTED in part** and **DENIED in part**.

## I.    **BACKGROUND**[1]

On December 12, 2023, Plaintiffs Salvatore and Jane Mattiaccio, along with their businesses Level and Square Construction and Remodeling, LLC, and Level and Square Construction, LLC (Level and Square)[2] (collectively, Plaintiffs) sued various entities and individuals, including William Scharfenberg, Assistant Ocean County Prosecutor and owner of Beacon Homes of NJ, LLC and Christopher Heisler, Assistant Ocean County Prosecutor (individually and in their official capacities) (collectively, the Prosecutor Defendants); Beacon Homes of NJ, LLC;[3] Joseph Coronato and Bradley Billhimer, Ocean County Prosecutors (individually and in their official capacities);[4] the Ocean County Prosecutor's Office (the OCPO); Dave Scalabrini, Mark Malinowski, and Stephen Shadiack, detectives in the OCPO (collectively, the Detective Defendants);[5] Prosecutor John Does 1-20 (presently unidentified Assistant Ocean

---

[1]    On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). Plaintiffs attach supplemental certifications and documents to their Opposition to Defendants' Motions to Dismiss. (ECF Nos. 11, 41.) Because "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," the Court will not consider any new facts or arguments set forth in these briefs. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc*., 836 F.2d 173, 181 (3d Cir. 1988) (internal quotation marks omitted).

[2]    While the caption lists "Level and Square Construction and Remodeling LLC" and "Level and Square Construction, LLC" as two separate companies, the Complaint otherwise describes them as a single entity. Thus, the Court will refer to both companies as "Level and Square."

[3]    Defendant Beacon Homes has answered the Complaint. (ECF No. 13.) Accordingly, all claims against them shall proceed.

[4]    Defendant Coronato is incorrectly pled as "Joseph Coronado."

[5]    Defendant Shadiack is incorrectly pled as "Stephen Shadiak."

County Prosecutors); Investigator Richard Roes 1-20 (presently unidentified employees of the Ocean County Prosecutor's Office).  (*See generally* ECF No. 1.)

Plaintiffs allege that Scharfenberg, in concert with the other Defendants, illegally pursued three separate criminal actions against them over a business rivalry.  Plaintiffs bring claims under 42 U.S.C. § 1983 and the Declaratory Judgment Act as well as state law claims.[6]

Plaintiffs are owners of Level and Square, a construction company located in Point Pleasant, New Jersey.  (*Id*. ¶¶ 16-18.)  Following Hurricane Sandy in 2012, eligible homeowners received financial grants to rebuild or repair their storm-damaged homes under New Jersey's Reconstruction, Rehabilitation, Elevation, and Mitigation ("RREM") Program.  (*Id*. ¶ 33.)  Before contracting with RREM grant recipients, construction businesses were required to apply for admission to the program's qualified pool of builders.  (*Id*. ¶ 34.)  In 2013, the New Jersey Department of Community Affairs (NJDCA) certified Level and Square as a qualified builder, allowing the company to begin contracting with RREM recipients in some of New Jersey's hardest hit communities, including Brick, Toms River, and Point Pleasant.  (*Id*. ¶ 22.)  Level and Square competed against forty-seven other RREM qualified builders for the same prospective customers who had their homes damaged by Hurricane Sandy.  (*Id*. ¶¶ 24, 35.)  One such competitor was Beacon Homes, which Scharfenberg owned and operated in the same Ocean County communities as Level and Square.  (*Id*. ¶¶ 23-24.)

Plaintiffs accuse Scharfenberg of operating Beacon Homes from the premises of the OCPO and contend that Scharfenberg's operation of Beacon Homes while simultaneously serving as an assistant county prosecutor violated New Jersey ethics laws.  (*Id*. ¶ 31).  Plaintiffs allege that

---

[6]    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

"[Ocean County Prosecutor] Corona[t]o and others at OCPO *were aware of and permitted* Scharfenberg's operation of Beacon Homes at and through the OCPO." (*Id*. ¶ 32 (emphasis added).) Plaintiffs further allege that Scharfenberg "[failed] to obtain permissions from the Prosecutor as the law required." (*Id*. ¶ 42.) Plaintiffs claim that Scharfenberg's ownership in Beacon Homes motivated his pursuit of criminal investigations and prosecutions against Plaintiffs. (*Id*. ¶ 4.)

### A.    The RREM Application Case

Plaintiffs allege that Scharfenberg and the other Defendants undertook an improper investigation into Plaintiffs' RREM "New Home Builder" application that was submitted to the NJDCA in 2013. (*Id*. ¶ 57.) According to Plaintiffs, the "focal point" of the investigation was Mr. and Mrs. Mattiaccio's response to "Schedule B, Section 3C, question vi" of the application. (*Id*. ¶ 60.) Mrs. Mattiaccio checked "no" in response to the question and Mr. Mattiaccio did not answer. (*Id*. ¶¶ 60-62.) In doing so, Mr. and Mrs. Mattiaccio allegedly failed to disclose a "2008 conviction." (*Id*. ¶ 70.) The Complaint does not provide any further allegations regarding the 2008 conviction. Plaintiffs' Complaint states that "the [D]efendants investigated the [application] matter in 2014," but Plaintiffs provide no details as to the specific Defendants involved or the outcome of the investigation. (*Id*. ¶ 56.)

In 2017, the investigation allegedly led to the indictment of both Mr. and Mrs. Mattiaccio for "tampering with paperwork" (the Application Indictment). (*Id*. ¶¶ 44, 56, 68.) Plaintiffs state that after Mr. Mattiaccio's arrest in May 2017, he sent a letter to the Point Pleasant Police Department "demanding that the proposed [charges] be dismissed due to lack of prosecution." (*Id*. ¶ 43.) In "response to [his] demands, Plaintiffs were charged with 17 counts of 'tampering with paperwork.'" (*Id*. ¶ 44.)

Scharfenberg presided over the grand jury presentment in June 2017, and Detective Scalabrini gave testimony. (*Id.* ¶¶ 53-55.) During the presentment, Plaintiffs allege that the OCPO failed to disclose exculpatory evidence. (*Id.* ¶ 72.)[7] For example, Defendants allegedly failed to disclose to the grand jury that Plaintiffs had previously submitted various applications to New Jersey state agencies in which they did disclose "the 2008 conviction at issue." (*Id.* ¶¶ 70-71.) According to Plaintiffs, these previous disclosures indicate that their failure to disclose the conviction on the RREM application was a mistake rather than an intentional omission. (*Id.*)

During the grand jury presentment, Defendants also "chose to present extraneous evidence concerning a 1991 conviction and prior applications in a manner designed to intentionally confuse and mislead the jury." (*Id.* ¶ 69.) In doing so, Plaintiffs allege that the OCPO "[v]iolated the plaintiffs' Rights to Due Process and Fundamental Fairness by Suppressing Exculpatory Evidence." (*Id.* ¶ 78(d).) Mr. Mattiaccio "[pled] guilty . . . to two counts of tampering with paperwork in order to get Jane Mattiaccio's indictments dismissed" and was sentenced to two years probation. (*Id.* ¶ 45.)

### B.    The Stecz Case

In March 2018,[8] Mr. Mattiaccio "became embroiled in a contract dispute" over a new home that Level and Square was preparing to build for Elizabeth Stecz. (*Id.* ¶¶ 37, 46.) After Stecz cancelled her contract, Mr. Mattiaccio refused to issue her a refund, claiming that her cancellation

---

[7]    The Complaint also states that Detective Malinowski "participated in the prosecution, investigation, and wrongful and unlawful actions taken against the plaintiffs." (*Id.* ¶ 67.) Plaintiffs provide no specific details about Malinowski's role.

[8]    Although the Complaint states "March 2016," the Court assumes for purposes of Defendants' Motions that Plaintiffs are referring to March 2018, as the allegations in the Complaint largely pertain to 2018. (*Compare id.* ¶ 37, *with* ¶ 46.)

was improper and "demanded to proceed to [a]rbitration." (*Id*. ¶¶ 38-39.) Instead of resolving the problem with Level and Square directly, Stecz allegedly contacted Detective Shadiack "to improperly and unlawfully initiate and conduct a criminal investigation into what in reality was only a civil suit." (*Id*. ¶ 40.) Mr. Mattiaccio was arrested in connection with Stecz's complaint on May 25, 2018. (*Id*. ¶ 50.)

Plaintiffs claim that Defendants "either intentionally failed to conduct a proper investigation . . . or intentionally and willfully ignored exculpatory evidence." (*Id*. ¶ 81.) Additionally, Plaintiffs allege that Defendants (under Scharfenberg's direction) once again failed to present exculpatory evidence to the grand jury regarding Stecz's complaint. (*Id*. ¶ 100.) According to Plaintiffs, the grand jury was not informed that Stecz's cancellation of the contract was delivered late and to the incorrect address. (*Id*.) Defendants also allegedly omitted the fact that Plaintiffs "had demanded arbitration, which would indicate that the plaintiffs desired to properly have the matter adjudicated as opposed to perpetrating fraud and crimes[.]" (*Id*.) Mr. Mattiaccio was indicted, but the matter was later dismissed. (*Id*. ¶ 82.)

### C.    The Stocketta Case

Separate from the Stecz case, OCPO allegedly initiated another criminal investigation into Mr. Mattiaccio in 2018 based on a different customer's allegations. Plaintiffs allege that Mr. Mattiaccio's arrest on May 25, 2018 also resulted from this investigation. (*Id*. ¶ 86.) Plaintiffs claim that a disgruntled Level and Square client, Robert Stocketta, went to Shadiack and accused Mr. Mattiaccio of "theft of an installation." (*Id*. ¶ 83.) Mr. Mattiaccio allegedly "spent three days . . . in Ocean County Jail, where the conditions were deplorable, and the Sheriff's officers ignored Mr. Mattiaccio's pleas for help." (*Id*. ¶ 86.) Plaintiffs state that the arrest was improper given that Shadiack was aware of Plaintiffs' long-standing disagreement with Stocketta. A year prior,

Plaintiffs allegedly went to Shadiack to alert him that Stocketta was "causing a problem with regard to delivery of the elevator," and copied Shadiack on an email in which Stocketta threatened to have Plaintiffs arrested. (*Id*. ¶ 84.) According to Plaintiffs, neither Scharfenberg nor Shadiack disclosed this information to the grand jury. (*Id*. ¶¶ 85, 102.) Plaintiffs also allege that Defendants provided information regarding the Stecz and Stocketta criminal investigations to media outlets in May 2018. (*Id*. ¶ 50.) While the Stocketta case was ultimately dismissed in November 2020, Plaintiffs allege that Mr. Mattiaccio "continues to endure harassing comments and reviews online via Nextdoor App [ ] [a]nd Facebook, in addition to receiving letters to his office." (*Id*. ¶¶ 85-86.)

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1), a defendant may move at any time to dismiss the Complaint for lack of subject matter jurisdiction on either facial or factual grounds. *Gould Electr. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co*., 67 F. Supp. 2d 424, 438 (D.N.J. 1999). In analyzing a facial challenge, a court "must only consider the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff." *Gould Electr. Inc*., 220 F.3d at 176. "A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists." *Arosa Solar Energy Sys., Inc. v. Solar*, Civ. 18-1340, 2021 WL 1196405, at *2 (D.N.J. March 30, 2021).

A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Hartig Drug Co. Inc. v. Senju Pharm. Co*., 836 F.3d 261, 268 (3d Cir. 2016). The "trial court is free to weigh

7

the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268.

Rule 12(b)(1) "provides for the dismissal of a proceeding for lack of subject-matter jurisdiction . . . including lack of jurisdiction due to Eleventh Amendment immunity." *Nemeth v. Off. of the Clerk of the N.J. Superior Ct*, Civ. 19-16809, 2020 WL 2537754, at *2 (D.N.J. May 19, 2020). State sovereign immunity under the Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Wright v. N.J. Dep't of Educ.*, 115 F. Supp. 3d 490, 494 (D.N.J. 2015). Once a challenge to jurisdiction is raised under Rule 12(b)(1), the plaintiff bears the burden of demonstrating the existence of subject-matter jurisdiction. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006).

**B.      Rule 12(b)(6): Failure to State a Claim**

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dir. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372

(3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis* v. Wells Fargo, 824 F.3d 333, 349 (3d Cir. 2016).

## III.  <u>DISCUSSION</u>

Defendants raise numerous grounds for dismissing the claims against them.  *First*, the Eleventh Amendment bars Plaintiffs' claims.  *Second*, Defendants are not "persons" amenable to suit under § 1983.  *Third*, absolute immunity bars Plaintiffs' civil rights claims.  *Fourth*, Plaintiffs' civil rights claims are time barred.  *Fifth*, Plaintiffs fail to state a claim under Rule 12(b)(6).  *Sixth*, the New Jersey Tort Claims Act (NJTCA) bars the state law claims.  *Seventh*, the NJTCA's qualified immunity provisions shield Defendants from liability.  The Court will address each argument in turn.

### A.    **Eleventh Amendment Sovereign Immunity**

Defendants move to dismiss the Complaint based on Eleventh Amendment sovereign immunity.  (ECF No. 37-1 at 11.)[9]  The Eleventh Amendment protects non-consenting states from suits brought in federal court by private citizens seeking money damages.  *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).  Sovereign immunity applies to state agencies

---

[9]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

and their employees as long as the state is the "real party in interest." *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989).

In *Fitchik*, the Third Circuit laid out a three-factor test for sovereign immunity: (1) "[w]hether the money that would pay the judgment would come from the state," (2) "[t]he status of the agency under state law," and (3) [w]hat degree of autonomy the agency has." *Id.* at 659. "*Fitchik* provides the proper framework for analyzing Eleventh Amendment sovereign immunity as it applies to county prosecutors." *Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 857–58 (3d Cir. 2014).

"When county prosecutors and their subordinates are involved in the investigation and enforcement of the State's criminal laws, they perform a function that has traditionally been the responsibility of the State." *Wright v. State*, 778 A.2d 443, 464 (N.J. 2001). Indeed, "[c]ourts within the Third Circuit have consistently held that the Eleventh Amendment precludes federal suits against New Jersey county prosecutors, as well as their offices, arising out of their law enforcement functions on the basis that the real party in interest in these suits is the State of New Jersey." *Duncan v. Office of Passaic Cnty. Prosecutor*, Civ. No. 05-1931, 2012 WL 1079471, at *2 (D.N.J. Mar. 30, 2012); *see also Beightler v. Office of Essex Cnty. Prosecutor*, 342 Fed. App'x 829, 832 (3d Cir. 2009) (holding that the Essex County Prosecutor's Office "was acting as an arm of the state and entitled to immunity under the Eleventh Amendment" when its prosecutors were performing law enforcement and investigative functions); *Hyatt v. County of Passaic,* 340 F. App'x 833, 837 (3d Cir. 2009) (finding that county prosecutor's office was entitled to sovereign immunity because defendants were acting in a prosecutorial function which is not autonomous from the state). "Decisions such as whether to bring charges are clearly within the 'law enforcement function[s] . . . that the Legislature has delegated to the county prosecutors.'" *Rouse*

*v. N.J. Dep't of Health & Hum. Servs.*, Civ. 15-01511, 2015 WL 5996324, at *3 (D.N.J. Oct. 13, 2015) (quoting *Wright*, 778 A.2d at 462).

Here, because Defendants' alleged misconduct involved the state function of investigation and the enforcement of the criminal laws, Defendants are considered arms of the state, and the State is therefore responsible for any judgment against them under *Fitchik*'s first factor. *Wright*, 169 N.J. at 462–463 (stating that when "county prosecutors and their subordinates act in their law enforcement/investigatory capacity, they act as agents and officers of the State. . . . When their conduct in that context is actionable, the State should be made to respond to damages"). This designation applies not only to the OCPO, but also to all of its employees including the County Prosecutors, Assistant Prosecutors and Detective Defendants when sued in their official capacity. *See Evans v. City of Newark*, Civ. No. 14-00120, 2016 WL 2742862, at *11 (D.N.J. May 10, 2016) (finding all Essex County Prosecutor Office ("ECPO") defendants—including investigators and detectives employed by the ECPO—to be acting as "arms of the state").

Second, the Court must look to the status of the agency under state law, *i.e.* whether "state law treats an agency as independent, or as a surrogate for the state." *Fitchik,* 873 F.2d at 662. County prosecutors are "appointed by the Governor with the advice and consent of the [State] Senate" under the New Jersey Constitution. N.J. Const. art. VII, § 2, ¶ 1. OCPO's designation as a "constitutionally established office" satisfies the second *Fitchik* factor. *Rouse*, 2015 WL 5996324, at *3 (holding that the Hudson County Prosecutor's Office, as a "constitutionally established office," satisfied the second *Fitchik* factor).

Finally, the Court considers Defendants' degree of autonomy from the state. New Jersey law dictates that "the criminal business of the State" is "prosecuted by the Attorney General and the county prosecutors." N.J. Stat. Ann. § 2A:158-4. The New Jersey Attorney General may

intervene or take over any case that county prosecutors initiate.  N.J. Stat. Ann. § 52:17B-106; *see also Murphy v. Middlesex Cnty.*, Civ. No. 15-7102, 2017 WL 6342154, at *6 (D.N.J. Dec. 12, 2017) (finding under the third *Fitchik* factor that "County Prosecutor's offices and their employees are subject to supervision and supersession by the Attorney General when engaged in the criminal business of the State" (internal quotation marks omitted)); *Hof v. Janci*, Civ. No. 17-295, 2017 WL 3923296, at *4 (D.N.J. Sept. 7, 2017) (concluding that the Hudson County Prosecutor's Office was not autonomous because the office and its employees are "subject to supervision and supersession by the Attorney General").  Accordingly, the OCPO and its employees are not an autonomous entity when performing its prosecutorial functions such as investigating, arresting, or prosecuting Plaintiffs.

Here, based upon the application of the *Fitchik* factors, the Court finds that the OCPO is an "arm of the state" and sovereign immunity bars any claim for damages against the OCPO as well as the Assistant County Prosecutors and the Detective Defendants in their official capacities. *Kaul v. Christie*, 372 F. Supp. 3d 206, 243 (D.N.J. 2019); *Estate of Bardzell v. Gomperts*, 515 F. Supp. 3d 256, 267 n.6 (D.N.J. 2021) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is not different from a suit against the state itself.") (quoting *Allen v. N.J. State Police*, 974 F.3d 497, 506 (3d Cir. 2020)).

The doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), dictates that a plaintiff may bring a suit against state agencies and officials—notwithstanding the Eleventh Amendment's jurisdictional bar—when the plaintiff seeks *prospective* injunctive relief to end a continuing violation of federal law.  *Delaware River Joint Toll Bridge Comm'n v. Sec'y Pa. Dep't of Lab. &*

12

*Indus.*, 985 F.3d 189, 193 (3d Cir. 2021).[10]  This exception "requires [the Court] to 'conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law' and whether it 'seeks relief properly characterized as prospective.'"  *Id.* at 193–94 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Plaintiffs' Complaint solely concerns past violations of state and federal law.  Plaintiffs make no allegation of "an ongoing violation of federal law [nor] seek[ ] relief properly characterized as prospective." *Verizon Md.*, 535 U.S. at 645 (citations omitted).  Instead, Plaintiffs insert a passing request for injunctive relief to "prohibit[] [D]efendants from continuing any violations against [P]laintiffs."  (ECF No. 1 ¶ 111.)  Plaintiffs do not explain the nature of the "violations" from which they seek relief and fail to allege specific facts that would allow the Court to infer that these "violations" are ongoing.  *See Suring v. South River Bd. of Educ.*, Civ. No. 20-2804, 2022 WL 264464, at *3 (3d Cir.  Jan. 27, 2022) (holding that *Ex Parte Young* exception did not apply when the plaintiff failed to include facts indicating that constitutional violations were ongoing); *Taylor v. City of Jersey City*, Civ. No. 22-457, 2023 WL 6997250, at *4 (D.N.J. Oct. 24, 2023) (dismissing claims as barred by the Eleventh Amendment where the plaintiff failed to allege specific facts from which the court might infer that the alleged civil rights violations were ongoing).

---

[10]    There are two other exceptions to Eleventh Amendment immunity, neither of which apply here.  Plaintiffs do not argue that Congress has abrogated the Eleventh Amendment in this context. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996) (finding that Congress may abrogate Eleventh Amendment immunity if it has "unequivocally express[ed] its intent to" do so and acted "pursuant to a valid exercise of power"); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976)).  Nor is there any indication that the State waived sovereign immunity.  *Coll. Sav. Bank*, 527 U.S. at 670 (*citing Clark v. Barnard*, 108 U.S. 436 (1883)).

In sum, all claims against the OCPO, the County Prosecutors, Assistant Prosecutors, and Detective Defendants in their official capacities are dismissed without prejudice. The Court next addresses Defendants' arguments regarding Plaintiffs' claims against Defendants in their individual capacities.[11] *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

**B.     Section 1983 Claims (Count I)**

Under "Count I," Plaintiffs allege that Defendants, "individually, jointly and severally and through a conspiracy," have deprived Plaintiffs of their "rights to due process, the presumption of innocence, [and] the right to counsel and fundamental fairness under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution." (ECF No. 1 ¶ 109.) They claim that their damages include the following: "[b]eing wrongfully investigated and prosecuted, requiring them to incur legal fees"; "[d]eprivation of their rights to the presumption of innocence, due process and fundamental fairness, and to be free of false imprisonment"; "[d]estruction of the plaintiffs' right to earn a[ ] livelihood"; "[d]amage to their reputations"; and "[e]motional distress and personal toil." (*Id.* ¶ 111.) Based on these allegations, the Court construes the Complaint as asserting malicious prosecution and false arrest claims under the Fourth Amendment and a Fourteenth Amendment reputational damage claim.

While Plaintiffs invoke the Fifth and Sixth Amendments, there are no allegations that could sustain a claim brought under those constitutional provisions. *See Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983); *see generally Edwards v. Arizona*, 451 U.S. 477 (1991)

---

[11]     Although the Complaint is either silent or unclear regarding individual claims against certain Defendants, the Court construes Plaintiffs' claims as being asserted against all Defendants in their individual capacities. *Atwell v. Schweiker,* 274 F. App'x 116, 118 (3d Cir. 2007) (citing *Melo v. Hafer*, 912 F.2d 628, 636 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991)); *Gregory v. Chehi*, 843 F.2d 111, 119–20 (3d Cir. 1988).

(articulating the contours of a Fifth Amendment right to counsel during custodial interrogations); *Rothgery v. Gillespie Cnty., Tex.,* 554 U.S. 191, 198 (2008) (holding that the Sixth Amendment right to counsel attaches upon "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment").[12]

### 1.    "Persons" Under § 1983 and Amenability to Suit

Scharfenberg, Heisler, Shadiack, and Malinowski argue that they are not "persons" under § 1983 and are not amenable to suit.  (*See* ECF No. 37-1 at 34.)  Section 1983 imposes liability on "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added).  Defendants deemed *not* to be "persons" are immune from suit.

Individuals that are "arms of the state" for Eleventh Amendment purposes are not considered "persons" amenable to suit under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989).[13]  However, individual defendants named in their individual capacity are amenable

---

[12]    Plaintiffs also appear to assert a Fourteenth Amendment failure-to-investigate claim.  To the extent that such a claim is asserted, the Court will not address it here given that the Third Circuit has not affirmatively recognized an independent cause of action for failing to conduct a constitutionally adequate investigation.  *Geness v. Cox*, 902 F.3d 344, 349 n.5 (3d Cir. 2018) (noting that a Fourteenth Amendment reckless investigation claim, "if cognizable, could only arise under the Fourth Amendment." (citing *Brooks v. City of Chi.*, 564 F.3d 830, 833 (7th Cir. 2009) (observing that "[a] plaintiff cannot state a due process claim by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment" (citations omitted)).

[13]    Determining whether a defendant is a "person" under § 1983 is related to but distinct from an Eleventh Amendment analysis.  *See Estate of Lagano*, 769 F.3d at 857 (finding that the District Court's analysis "improperly conflates the jurisprudence interpreting the term 'person' in the

to suit as "persons" under § 1983 even if they are being sued for what are technically "official acts." *Hafer*, 502 U.S. at 27–28 (holding that, while suits against state officials in their official capacity are "treated as suits against the State," personal capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law.") (internal citations omitted); *see also Evans*, 2016 WL 2742862, at *10 ("[i]ndividuals named as defendants in their personal capacities are amenable to suit as 'persons.' It does not matter that they happen to be government officials, or that the acts for which they are sued happen to be official acts") (internal citations omitted); *Estate of Lagano*, 769 F.3d at 854 n.5 ("Of course, a state official sued in his or her personal capacity is amenable to suit under [§] 1983[.]").  Therefore, Scharfenberg, Heisler, Shadiack, and Malinowski are amenable to suit under § 1983 in their individual capacity.

### 2.    Absolute Immunity

Defendants also argue that all claims against them should be dismissed based on absolute immunity.  (ECF No. 37-1 at 33.)  In *Imbler v. Pachtman*, 424 U.S. 409, 435 (1976), the Supreme Court recognized that absolute immunity applies to prosecutors subject to § 1983 claims, explaining that such protections were "necessary to protect the judicial process."  *Id*. at 437. Without absolute immunity, the Court reasoned, the constant threat of litigation could discourage prosecutors from taking necessary action, hampering the pursuit of justice.  *Id*. at 425–426.

But absolute immunity is not without limits.  *Imbler* dictates that these protections only apply to prosecutorial activities "intimately associated with the judicial phase of the criminal process" and not investigatory actions.  *Id*. at 430.  The purpose of this distinction is to "leave standing those cases . . . which hold that a prosecutor engaged in certain investigative activities

---

context of § 1983 with the concept of Eleventh Amendment sovereign immunity. [. . . T]he two concepts are analytically distinct").

enjoys, not the absolute immunity associated with the judicial process, but only a good-faith defense comparable to the policeman." *Id*. A prosecutor, therefore, has absolute immunity only for actions taken in the role of advocate for the state. *Odd v. Malone*, 538 F.3d 202, 207–08 (3d Cir. 2008) (finding that to overcome the presumption against absolute immunity, "a prosecutor must show that he or she was functioning as the state's advocate when performing the action(s) in question").

Determining when absolute immunity applies is a functional analysis attaching "not to the prosecutor as an individual, but to the nature of the function pursuant to which he acts." *Munchinski v. Soloman*, 747 F. App'x 52, 56 (3d Cir. 2018). The Third Circuit has explained that absolute immunity applies to any action a prosecutor takes while acting in a "quasi-judicial role." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992). This includes court appearances in which a prosecutor presents evidence or makes legal arguments, as well as out-of-court behavior "intimately associated with the judicial phases of litigation." *Id*. (internal citations omitted).

While "malfeasance is no proper part of a prosecutor's role . . . the analysis under *Imbler* is different. Immunity depends on the nature of the function, not the rightful or wrongful manner in which it is performed." *Evans*, 2016 WL 2742862, at *11. "To give examples of prosecutorial activities protected by absolute . . . immunity, soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings is absolutely protected." *Id*. (quoting *Kulwicki*, 969 F.2d at 1465). "Use of the false testimony in connection with the prosecution is absolutely protected." *Id*. "Even interviews generating evidence to be presented to a grand jury are absolutely protected." *Id*. (quoting *Kulwicki*, 969 F.2d at 1465).

### i. Scharfenberg

With respect to Assistant Prosecutor Scharfenberg, the Complaint alleges misconduct in connection with Scharfenberg's initiation of the criminal investigations against Plaintiffs and his presentation of evidence to the grand jury. The Complaint states that Scharfenberg presided over and directly participated in the grand jury presentments. (*See* ECF No. 1 ¶¶ 54, 79, 102.) Plaintiffs fault Scharfenberg for not introducing—or failing to direct others to introduce—exculpatory evidence during the grand jury proceedings. (*See* Section I, *supra*.) Regardless of the "rightful or wrongful manner" in which the grand jury presentment was conducted, such actions are core to the prosecutorial advocacy function. *Evans*, 2016 WL 2742862, at *11; *see also Burns*, 500 U.S. at 485 (observing that in *Imbler*, the Supreme Court extended absolute immunity to "the knowing use of false testimony before the grand jury"); *Andors v. Gross*, 294 F. App'x 731, 734 (3d Cir. 2008) (finding that prosecutors were protected by absolute immunity for their presentation to the grand jury). Thus, those acts are afforded absolute immunity.

Scharfenberg's decision to prosecute Plaintiffs, despite his alleged conflict of interest, is afforded the same result.[14] Absolute immunity "exists primarily to protect the discretion of prosecutors when they act as advocates for the state." *Munchinski v. Solomon*, 747 F. App'x 52, 58 (3d Cir. 2018). This discretion—or lack thereof—underpins whether a prosecutor is acting in the role of an advocate and, thus, protected by absolute immunity regardless of the prosecutor's

---

[14]    Similarly, the claims against Coronato are barred by absolute immunity. Plaintiffs' singular allegation as to Coronato is that he was "aware of and permitted Scharfenberg's operation of Beacon Homes at and through the OCPO." (ECF No. 1, ¶ 32.) However, whether Mr. Mattiaccio's prosecution was motivated by Scharfenberg's involvement in Beacon Homes has no bearing on the Court's absolute immunity determination. That is, even if Mr. Mattiaccio was prosecuted because of Scharfenberg's involvement in Beacon Homes, the decision to prosecute him is afforded absolute immunity. Thus, the Court dismisses without prejudice all federal claims against Coronato.

personal motives. *Kulwicki*, 969 F.2d at 1464. In *Kulwicki v. Dawson*, the Third Circuit held that a county district attorney was immune from suit despite directing a police officer to file baseless charges against the District Attorney's political rival. *Id.* Citing *Imbler*, the *Kulwicki* court reasoned that "[c]onsideration of personal motives is directly at odds with the Supreme Court's simple functional analysis of prosecutorial immunity. . . . The Court has explicitly stated that even groundless charges are protected, in the interest of maintaining vigorous prosecution of crime." *Id.* (citing *Imbler*, 424 U.S. at 424–28). Similarly, in *Evans v. City of Newark*, the court held that absolute immunity protected a county prosecutor's decision to initiate a prosecution motivated by her desire to boost a mayor's political campaign and gain career advancement. 2016 WL 2742862, at \*12; *see also Fuchs v. Mercer Cnty.*, 260 F. App'x 472, 475 (3d Cir. 2008) ("Prosecutors enjoy absolute immunity for the decision to initiate a prosecution . . . and even for failure to conduct adequate investigation before filing charges.") Consequently, even if Scharfenberg initiated the prosecution for the purpose of undermining Plaintiffs' business, that decision is afforded absolute immunity.[15]

All of Scharfenberg's actions, however, "are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). While immunity attaches to actions "intimately associated with the judicial phases of litigation," it does not attach to "administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Odd*, 538 F.3d at 208. The determination of whether a prosecutor is acting as an

---

[15]    In *Imbler*, the Court emphasized that "the immunity of prosecutors from liability in suits under § 1983 does not leave the public powerless to deter misconduct or to punish that which occurs. . . . [A] prosecutor stands perhaps unique, among officials whose acts could deprive persons of constitutional rights, in his amenability to professional discipline by an association of his peers." 424 U.S. at 429–430.

advocate or in an administrative/investigatory function is a fact-specific inquiry. *See Odd*, 538 F.3d at 210 (noting that while "it is tempting to derive bright-line rules . . . the Supreme Court has cautioned against such categorical reasoning") (citing *Imbler*, 424 U.S. at 431). However, courts have found, for example, that prosecutors are not entitled to absolute immunity when holding press conferences, *Buckley*, 509 U.S. at 276–78, fabricating evidence during a preliminary investigation, *id.*, or deliberately destroying exculpatory evidence. *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006).

The Complaint contains allegations that Scharfenberg made false statements about Plaintiffs to Level and Square customers, which caused financial harm. (ECF No. 1 ¶¶ 93-95.) Because these statements do not appear to be "intimately associated with the judicial phases of litigation," absolute immunity does not apply. *Odd*, 538 F.3d at 208.[16]

### ii. Heisler

Plaintiffs allege that Assistant Prosecutor Heisler helped supervise the Stecz grand jury presentment, during which Defendants presented falsified dates, failed to present exculpatory evidence, and otherwise presented misleading information. (ECF No. 1 ¶ 79-81.) For the reasons specified above, grand jury proceedings are core to a prosecutor's advocacy function. *See Evans*, 2016 WL 2742862, at *12 (holding that prosecutors are absolutely immune from suits arising from

---

[16]    Other allegations that could possibly fall outside the absolute immunity protections are too vague to address here. *See D.W. by Renaud v. N.J. Div. of Child Protection Permanency*, No. 21-15789, 2023 WL 3626266, at *5 (D.N.J. May 24, 2023) (stating that "courts should not consider any group pleadings that cannot reasonably be attached to an individual defendant due to improper vagueness"). For example, while there are claims pertaining to Defendants' investigatory acts and Defendants' communication with media outlets regarding Mr. Mattaccio's 2018 arrest, none of them allow the Court to ascertain whether they are being brought against Scharfenberg or another Defendant. *See id.*; *Ingris v. Borough of Caldwell*, Civ. No. 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) (discrediting any allegations made by a plaintiff that could be characterized as an "impermissibl[e] vague group pleading").

misconduct in connection with presenting a case to the grand jury). Because this is the sole allegation regarding Heisler, all § 1983 claims against him in his individual capacity are also dismissed without prejudice.

### iii. Shadiack, Scalabrini, Malinowski

While absolute immunity is not generally extended to investigators, the Supreme Court has held that a "grand jury witness has absolute immunity from any § 1983 claims based on the witness' testimony." *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012). Thus, Detectives Shadiack, Scalabrini, and Malinowski are entitled to absolute immunity for any allegations pertaining to the grand jury proceedings. That includes Detective Scalabrini's alleged failure to present exculpatory evidence during the grand jury proceeding in the RREM application case, (ECF No. 1 ¶¶ 55, 69), Detectives Malinowski's and Shadiack's alleged testimony of falsified dates and misleading information during the Stecz presentment, (*id*. ¶¶ 79–80), and Detective Shadiack's alleged lies to the grand jury in the Stocketta case. (*id*. ¶ 85.) Therefore, any § 1983 claims against the Detective Defendants related to their testimony before the grand jury are dismissed based on absolute immunity.

### 3.    Statute of Limitations

Defendants argue that the statute of limitations bars Plaintiffs' § 1983 claims because they were filed beyond the two-year limitations period applicable to personal injury claims in New Jersey. (*See* ECF No. 8-1 at 14-17; ECF No. 37-1 at 29–30); *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) ("A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims."). Because the statute of limitations is an affirmative defense, Plaintiffs have no obligation to preemptively allege the timeliness of the claims in their complaint. *Evans v. Gloucester Twp.*, 124

F. Supp. 3d 340, 349 (D.N.J. 2015) ("Defendants' statute of limitations argument is an affirmative defense and 'the burden of establishing its applicability to a particular claim rests with the defendant.'" (quoting *Pension Trust Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc*., 730 F.3d 263, 271 (3d Cir. 2013))).  However, "where the events alleged in the complaint plainly lie outside the limitations period, and nothing in the complaint suggests a possible basis for equitable tolling, dismissal is appropriate."  *Evans*, 2016 WL 2742863, at *6.

Plaintiffs filed their Complaint on December 12, 2023.  (ECF No. 1.)  However, the allegations largely concern events that occurred in 2018.  (*See generally id*.)  Plaintiffs do not deny that a two-year statute of limitations period applies to their claims, but instead argue that because they were "subjected to a continual, cumulative [ ] pattern of tortious conduct of the defendants," their claims are subject to the continuing violation doctrine, the discovery rule, and equitable tolling.[17]  (ECF No. 41 at 20.)  Plaintiffs contend that the statute of limitations period only began to accrue when they discovered "the nature of Defendant, William Scharfenberg, operating as a competitor in business while at the same time prosecuting them, which occurred in August 2023, and certainly no earlier than October 4, 2022, when the last of the indictments was dismissed." (ECF No. 41 at 20; *see also* ECF No. 11 at 12.)  The Court will address each tolling principle raised by Plaintiffs.

### i.  Continuing Violation Doctrine

The Court rejects Plaintiffs' argument that the continuing violation doctrine applies to this case.  The doctrine provides that when an individual experiences a continual pattern of tortious conduct, there are certain circumstances in which the statute of limitations is tolled until after the

---

[17]     State tolling principles govern § 1983 claims unless they conflict with federal law or policy. *Wilson v. Garcia*, 471 U.S. 261, 269 (1985).

wrongful conduct ceases. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *see also Roa v. Roa*, 985 A.2d 1225, 1233 (N.J. 2010) (noting New Jersey's adoption of the *Morgan* analytical framework with respect to the continuing violation doctrine). As courts in this district have noted, "virtually all of the precedent discussing the continuing violation doctrine involves workplace discrimination suits." *Evans*, 124 F. Supp. 3d at 349 (internal quotation marks omitted) (rejecting the applicability of the continuing violation doctrine to a § 1983 claim). Specifically, this doctrine was developed in the context of a hostile work environment claim, which is often characterized by repeated instances of harassment. *Morgan*, 536 U.S. at 115; *see also Roa*, 985 A.2d at 1233 (stating that the continuing violation doctrine "allow[s] for the aggregation of acts, each of which, in itself, might not have alerted the employee of the existence of a claim, but which together show a pattern of discrimination," and noting New Jersey's adoption of the *Morgan* analytical framework in employment discrimination cases).

Here, Plaintiffs allege a series of discrete acts which, by themselves, each constitute a separate actionable claim. For example, Plaintiffs allege that during the course of the Stecz investigation, Mr. Mattiaccio was unlawfully detained, maliciously prosecuted, and subject to defamatory media reports. (ECF No. 1 ¶¶ 49-50, 80-86, 89.) Each of these discrete acts "constitute[] an independent tort," which cannot be aggregated to cure statute of limitations issues. *Rankin v. Smithburger*, Civ. No. 12-01373, 2013 WL 3550894, at *6 (W.D. Pa. July 11, 2013) (stating that the continuing violation doctrine does not apply to a series of allegations regarding unlawful entry, seizure of property, and eviction given that "[e]ach act constituted an independent tort, complete when the property had been unlawfully seized or when the home had been unlawfully searched"); *see also Evans*, 124 F. Supp. 3d at 349 ("The continuing violation doctrine does not apply to Plaintiff's claims because her claims are based on a series of separate acts which

she knew or should have known were actionable at the time they occurred."); *Roa*, 985 A.2d at 1233 ("[T]he doctrine does not permit the aggregation of discrete discriminatory acts for the purpose of reviving an untimely act of discrimination that the victim knew or should have known was actionable."). Therefore, the Court finds the continuing violation doctrine inapplicable to Plaintiffs' claims.

### ii. Discovery Rule

Plaintiffs also contend that, under New Jersey's "discovery rule," their claims only began to accrue upon learning of Scharfenberg's ownership of Beacon Homes in August 2023. (ECF No. 41 at 19.) The discovery rule dictates that the accrual of a cause of action will be delayed until a plaintiff knows, or after the exercise of reasonable diligence should know, that there is a basis for an actionable claim. *Rolax v. Whitman*, 175 F. Supp. 2d 720, 727 (D.N.J. 2001), *aff'd*, 53 F. App'x 635 (3d Cir. 2002). The effect of New Jersey's discovery rule is "essentially the same" as federal law relating to the accrual of causes of action. *Id*. That is, accrual is delayed until the plaintiff knows or should know that she has been injured and that injury was caused by another. *Id*.; *see also Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) ("Accrual is the occurrence of damages caused by a wrongful act — when a plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." (internal quotation marks omitted)). Therefore, the Court will address the discovery rule as applied to each of Plaintiffs' § 1983 claims.

The Court finds that Plaintiffs' false arrest claim is time barred. Under both federal and New Jersey state law, "the discovery rule . . . has been held to be inapplicable to cases of false arrest." *Rolax,* 175 F. Supp. at 727. The elements of a false arrest claim are (1) that an arrest

occurred; and (2) that the arrest was made without probable cause. *Brown v. Makofka*, 644 F. App'x 139, 143 (3d Cir. 2016).

Under a claim for false arrest, a plaintiff becomes aware of their injury (the arrest) and the person responsible (the arresting officer) the moment that it happens. *Id*. "Therefore, no delay in the accrual of the cause of action is necessary." *Id*.; *see also Rose v. Bartle*, 871 F. 2d 331, 351 n.19 (3d Cir. 1989) (stating that false arrest claims accrue on the date of arrest "because the plaintiffs would have had reason to know on those dates of the injuries which the tort encompasses"); *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 194 n.9 (3d Cir. 1984) ("It is obvious that when Deary was arrested, knowing that she had no complicity in the robbery, her cause of action accrued: nothing further had to occur."). Thus, Plaintiffs' false arrest claim began to accrue at the time of Mr. Mattiaccio's 2018 arrest because he would have understood at that time whether there was probable cause for his arrest. (*See* ECF No. 1 ¶ 86.) While Plaintiffs argue that all claims should be tolled until August 2023—the date they purportedly learned of Defendants' improper motive in pursuing the criminal actions against Plaintiffs— intent or malice is not an element of a false arrest claim. Therefore, motive is irrelevant and Plaintiffs' claim is dismissed as untimely.

Plaintiffs' reputational damage claim is also time barred. "[T]o make out a due process claim for deprivation of a liberty interest in reputation under § 1983, a plaintiff must show a stigma to [her] reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutzdown*, 455 F.3d 225, 236 (3d Cir. 2006) (emphasis in original); *see also Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989) ("[D]efamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by the state law of the Constitution.").

While Plaintiffs largely fail to connect the Complaint's factual allegations to specific causes of action, the Court surmises that Plaintiffs base this aspect of their § 1983 claim on allegations that Defendants provided information regarding the criminal investigations to media outlets in May 2018. (*See* ECF No. 1 ¶ 50.) The Complaint also alleges that Scharfenberg and Malinowski told Level and Square customers that the OCPO was investigating Mr. Mattiaccio for possible criminal violations.[18] (*Id.* ¶ 93.) As a result, "numerous customers cancelled their transactions with the plaintiffs . . . and [ ] the business[ ] suffered immensely, which in turn, caused significant financial harm to the individuals and their family." (*Id.* ¶ 94.)

Based on Plaintiffs' allegations, the Court finds that Plaintiffs knew or should have known of the injury constituting the basis of their reputational harm claim when it occurred in 2018 or when customers began cancelling their transactions. Plaintiffs' sole basis for extending the statute of limitations is related to the alleged conflict of interest involving Scharfenberg. However, a defendant's intent or motive is irrelevant for purposes of asserting a deprivation of liberty claim.

Lastly, Plaintiff's malicious prosecution claim is not time barred. To plead a malicious prosecution claim under § 1983, a plaintiff must establish: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir. 2014).

---

[18]    While Plaintiffs do not specify when Scharfenberg and Malinowski made these comments, the Court can infer that it was sometime in 2017 or 2018, given that the comments were made during the course of the criminal investigations.

Given that Plaintiffs' claim would not begin to accrue until Plaintiffs knew or had reason to know of *all* of the elements of the claim, *Kach*, 589 F.3d at 634, the Court finds that Plaintiffs' malicious prosecution claim would be tolled until August 2023, when Plaintiffs learned of the alleged malice underlying the criminal prosecutions against them. (*See* ECF No. 41 at 1.) Malice is defined as "ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Robinson v. Jordan*, 804 F. Supp. 2d 203, 210 n.8 (D.N.J. 2011) (quoting *Morales v. Busbee,* 972 F.Supp. 254, 261 (D.N.J. 1997)). Plaintiffs have pled that they learned of the "extraneous improper purpose" at issue here— Defendants' alleged prosecution of Plaintiffs as a means to undercut their business—after reading certain media reports in August 2023. (ECF No. 1 at ¶ 30.) It is on this date that Plaintiffs knew or should have known of the injury upon which their action is based. Therefore, the Court denies Defendants' motion to dismiss Plaintiffs' malicious prosecution claim based on the statute of limitations.

### iii. Equitable Tolling

The final tolling principle raised by Plaintiffs is equitable tolling. (*See* ECF No. 41 at 19.) "The doctrine of equitable tolling, though similar to the discovery rule, is slightly different." *Bustamante v. Borough of Paramus*, 994 A.2d 573, 588 (N.J. Super. Ct. App. Div. 2010). "It may be available when a plaintiff is misled . . . and as a result fails to act within the prescribed time limit." *Id*. (internal quotation marks omitted). Plaintiffs argue that Scharfenberg's non-disclosure of his ownership of Beacon Homes prevented them from filing within the limitation period. This argument fails for the same reasons that the discovery rule does not apply. There is no allegation that Plaintiffs' lack of knowledge regarding Scharfenberg's alleged malicious intent precluded Plaintiffs from knowing that their arrest was unlawful (false arrest) or that the information

provided to media outlets and Level and Square customers was untrue (reputational damage). "Contrary to plaintiffs' protestations, it is their inaction which formed the basis for their failure to file within the limitation period." *Freeman v. State*, 788 A.2d 867, 880 (N.J. Super. Ct. App. Div. 2002). Because the Court has already determined that Plaintiffs' malicious prosecution claim is not time barred, it need not determine whether equitable tolling applies to such a claim.

### 4.    Failure to State a Claim[19]

Based on the foregoing discussion, the only remaining federal claim is Plaintiffs' Fourth Amendment malicious prosecution claim against Scharfenberg, Scalabrini, Shadiack, and Malinowski.

Scalabrini alone argues that the Complaint's allegations are too conclusory to sustain a § 1983 claim against him individually.[20]  (ECF No. 8-1 at 20.)  The Court agrees.  The Court will not credit impermissible group pleadings that fail to give each Defendant "fair notice of what the

---

[19]    The Complaint contains no allegations related to Billhimer's personal involvement in the misconduct alleged under § 1983.  For claims brought under § 1983, a plaintiff must plead that each defendant was "personally involved, through personal direction or actual knowledge and acquiescence, in the wrongs alleged with respect to these claims." *Thomas v. Independence Twp.*, 463 F.3d 285, 298 (3d Cir. 2006) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.")) Indeed, the Complaint's only specific mention of Billhimer is that he served as the Ocean County Prosecutor beginning in September 2018. (*See* ECF No. 1 ¶ 7.)  This allegation alone is insufficient to state a claim against Billhimer.  Thus, all § 1983 claims against Billhimer are dismissed without prejudice.

[20]    The Remaining Moving Defendants do not raise any arguments regarding the merits of Plaintiffs' § 1983 claims against Scharfenberg, Shadiack, and Malinowski.  The Court is under no obligation to raise legal arguments that these Defendants have overlooked or ignored. *Millner v. Bayada Nurses, Inc.*, Civ. No. 05-3164, 2006 WL 231993, at *2 (D.N.J. Jan. 30, 2016) (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 441 (1990)).

claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555. There is only a single allegation specifically referencing Scalabrini by name, which states "Dave Scalabrini . . . cooperated with [ ] Scharfenberg, and gave testimony at The Application Case Grand Jury Presentment." (ECF No. 1 ¶ 55.) This allegation does not suggest that Scalabrini's "cooperation" with Scharfenberg was anything more than routine compliance with a subpoena to testify before a grand jury. Even if the Court were to read this statement in concert with other allegations to infer that Scalabrini lied during the grand jury presentment, such testimony is, as previously established, subject to absolute immunity. *Rehberg*, 566 U.S. at 369 (holding that a "grand jury witness has absolute immunity from any § 1983 claims based on the witness' testimony"). Thus, the Court dismisses without prejudice Plaintiffs' malicious prosecution claim against Scalabrini. [21]

### B.    Declaratory Judgment Act (Count II)

Plaintiffs bring Count II under 28 U.S.C. § 2201, the Declaratory Judgment Act, asking the Court for an "order declaring that defendants have violated [P]laintiffs' [constitutional] rights." (*See* ECF No. 1 ¶¶ 112–116.) The Declaratory Judgment Act states, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

Declaratory judgement "is inappropriate solely to adjudicate past conduct." *Gruntal & Co. v. Steinberg*, 854 F. Supp. 324, 332 (D.N.J.), *aff'd*, 46 F.3d 1116 (3d Cir. 1994). Plaintiffs' Complaint centers on past harm, and they have failed to demonstrate the probability of a "feared,

---

[21]    In his Motion to Dismiss, Scalabrini argues that qualified immunity and res judicata also bar Plaintiffs' claims. (*See* ECF No. 8-1.) Because the Court dismisses the claims against Scalabrini on other grounds, it will not address those arguments here.

future event . . . 'of sufficient immediacy and reality to warrant the issue of a declaratory judgment.'" (quoting *Salvation Army v. Dep't of Cmty Aff.*, 919 F.2d 183, 192 (3d Cir. 1990)).  Nor is "declaratory judgment meant simply to proclaim that one party is liable to another." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006).

The Court also notes that the declaration sought by Plaintiffs is duplicative of Plaintiffs' § 1983 claims.  Both require a finding that Defendants subjected Plaintiffs to the "deprivation of . . . rights, privileges and immunities secured by the Constitution and laws."  (*See* ECF No. 1 ¶¶ 106, 116.)  If Plaintiffs prevail on their § 1983 claims, "then an *actual judgment*, rather than a mere declaration, would be entered," entitling Plaintiffs to relief.  *Cf. Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 504–05 (D.N.J. 2009) (dismissing the plaintiffs' New Jersey Consumer Fraud Act claim as duplicative of their declaratory judgment claim).  Therefore, "unless Plaintiffs identify a basis in [§ 1983] whereby the Court must grant declaratory relief as a prerequisite for a finding of liability, the Court need not issue a separate declaratory judgment on the merits of the action." *Id.* at 505.  Therefore, Plaintiffs' declaratory judgment claim is dismissed.

## C.    State Law Claims[22]

In addition to Plaintiffs' federal claims, Plaintiffs bring four state law claims: (1) tortious interference with contractual relations against Scharfenberg and Beacon Homes (Count III); (2)

---

[22]    For reasons similar to those set forth above regarding Plaintiffs' § 1983 claims, Plaintiffs fail to allege sufficient facts to support the state law claims that they assert against Billhimer. Therefore, the Court dismisses without prejudice Count V (defamation) and VI (civil conspiracy) against Billhimer.

Regarding Coronato, the allegation that he was aware of and permitted Scharfenberg's outside employment with Beacon Homes does not support a defamation or civil conspiracy claim as there are no facts suggesting that Coronato's approval of Scharfenberg's outside employment was unlawful in any way.  Plaintiffs themselves cite to a statute that explicitly gives Coronato, as Ocean County Prosecutor, the discretion to determine whether Scharfenberg's outside employment was proper.  N.J. Stat. Ann. § 2A:158-15.1b ("[A]n assistant prosecutor may engage

tortious interference with prospective economic advantage against Scharfenberg and Beacon Homes (Count IV); (3) defamation against all Defendants (Count V); and (4) civil conspiracy against all Defendants (Count VI).

### 1.    NJTCA Notice Requirement

Defendants argue that Plaintiffs have failed to adhere to the New Jersey Tort Claims Act's (NJTCA) notice requirements.  (*See* ECF Nos. 50, 52.)  The NJTCA provides that, prior to bringing a tort claim against a public official or entity, a plaintiff must give notice to the public entity within 90 days of the accrual of the cause of action.  *See* N.J. Stat. Ann. § 59:8-8.  Otherwise, the plaintiff is "forever barred from recovering against a public entity or public employee[.]"  N.J. Stat. Ann. § 59:8-8(a).  This "notice requirement is a 'jurisdictional precondition[23] to filing suit,' . . . and suits that do not comply with the notice provision are 'forever barred from recovering against a public entity or public employee.'"  *Helms v. Miller*, Civ. No. 22-01325, 2024 WL 4972710, at *5 (D.N.J. Dec. 3, 2024) (quoting *Ptaszynski v. Uwaneme*, 853 A.2d 288, 294 (N.J. Super. Ct. App. Div. 2004); N.J. Stat. Ann. § 59:8-8).  Furthermore, Plaintiffs bear the burden of proving that the claim was filed with the proper public entity.  *Rolax*, 175 F. Supp. 2d at 729 (granting the defendants' motion to dismiss for failure to state a claim).

---

in limited outside employment or provide services as an independent contractor if . . . the county prosecutor has deemed the employment or services as not inconsistent with the duties of the office of assistant prosecutor[.]").  It is possible that the basis for Coronato's approval of Scharfenberg's outside employment gives rise to liability.  However, Plaintiffs fail to allege any facts to support such a contention.

[23]    Because the NJTCA's notice requirement is jurisdictional, the Court may consider facts outside of the Complaint in assessing Plaintiffs' compliance with that requirement under Rule 12(b)(1).  *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006).

In a supplemental filing requested by the Court, Plaintiffs attach an Initial Notice of Claim for Damages Against the State of New Jersey. (ECF No. 53.) The Court finds that the attached notice fulfills the NJTCA's notice requirement with respect to the events surrounding the Stecz case. The notice provides the information required by the NJTCA, N.J. Stat. Ann. § 59:8-4, including Mr. Mattiaccio's name and address; the date, place, and other circumstances of the occurrence giving rise to the claim; a description of the injury, damage or loss incurred; the name of the public entity or employee causing the injury, damage or loss, if known; and the amount claimed. The notice states that on May 25, 2018, Mr. Mattiaccio "was arrested by the Ocean County Prosecutors office and Point Pleasant Boro Police Department based upon a false claim made by a third party, Ms. Elizabeth Stecz." (*Id*. at 3.) The notice names the OCPO, Point Pleasant Boro Police, and Shadiack and alleges illegal arrest, improper investigation of the claim, illegal detention, violation of constitutional rights, defamation of character, slander, and financial hardship. (*Id*. at 3.) Additionally, Plaintiffs attach a certified mail receipt indicating that the notice was delivered to the New Jersey Department of Treasury's Tort and Contract Unit on August 2, 2018, which was within 90 days of Mr. Mattiaccio's arrest. (*Id*. at 2.)

However, Plaintiffs do not plead any facts regarding their compliance with the NJTCA's notice requirements with respect to the RREM application and Stocketta cases. Instead, they encourage the Court to accept their notice of claim relating to the Stecz case as applicable to the other two cases under the doctrine of substantial compliance. (ECF No. 49 at 4.) The doctrine of substantial compliance allows courts to avoid barring legitimate claims when "notice has been given in a way, which though technically defective, substantially satisfies the purposes for which notices of claims are required." *Lameiro v. W. New York Bd. of Ed.,* 348 A.2d 377, 379 (N.J. Super. Ct. 1975). The purpose of notice of claims is to allow state agency review of the claims in order

32

to facilitate settlement (for meritorious claims) or, alternatively, conduct an adequate investigation and defense. *Henderson v. Herman,* 862 A.2d 1217, 1223 (N.J. Super. Ct. App. Div. 2004) ("N.J.S.A. 59:8–4 is designed to provide the public entity with sufficient information to enable it promptly to evaluate its liability and potential exposure and, if it chooses, to correct a defective condition and also to engage in settlement negotiations prior to the commencement of suit." (internal quotation marks omitted)).

Plaintiffs plead no facts to suggest that Defendants were provided with any kind of notice—deficient or otherwise—that would allow a state agency to "evaluate its liability" with respect to the RREM application case or the Stocketta case. *Id.* Therefore, Plaintiffs' state law claims related to the RREM and Stocketta case are dismissed without prejudice. Plaintiff's claims against Scharfenberg for tortious interference with contractional relations (Count III) and tortious interference with prospective economic advantage (Count IV) are also dismissed for the same reason. Plaintiffs bear the burden of demonstrating compliance with the NJTCA's notice requirements at the motion to dismiss stage, a burden they have failed to meet. *Rolax*, 175 F. Supp. 2d at 729.

### 2. Immunity Under the NJTCA

The Remaining Moving Defendants[24] also argue that the defamation and conspiracy claims (Counts V and VI) are barred under several immunity provisions of the NJTCA. Because the Court finds that Plaintiffs have met the NJTCA notice requirements regarding the Stecz case only, the Court's NJTCA's immunity assessment is limited to allegations arising from that case. The NJTCA

---

[24]    Scalabrini argues that because there are no allegations pertaining to his involvement in the Stecz case, the Court should dismiss the state law claims against him. (*See* ECF No. 50 at 3.) The Court agrees and grants Scalabrini's Motion to Dismiss with respect to all state law claims without prejudice.

"was enacted with the purpose of limiting a public entity's or a public employee's liability in certain situations." *R.K. v. Y.A.L.E. Schools, Inc.*, 621 F. Supp. 2d 188, 199 (D.N.J. 2008) (quoting *Davis v. Twp. of Paulsboro*, 371 F. Supp. 2d 611, 617 (D.N.J. 2005)).  These situations, the Remaining Moving Defendants argue, include those in which a public employee "acts in good faith in the execution or enforcement of any law," N.J. Stat. Ann. 59:3-3, or causes injury "by his misrepresentation."  N.J. Stat. Ann. § 59:3-10.  The immunity provisions that the Remaining Moving Defendants cite, however, do not apply if the public employee acted "outside the scope of his employment" or if his conduct "constituted a crime, actual fraud, actual malice or willful misconduct."  N.J. Stat. Ann. § 59:3-14.

In a defamation action against public officers, New Jersey courts have held that immunity is lost when "defamation is made with *actual malice* in the *New York Times v. Sullivan* sense: 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Burke v. Deiner,* 479 A.2d 393, 399 (N.J. 1984) (emphasis added) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)).  Here, Plaintiffs allege that Scharfenberg and Malinowski made false statements to Level and Square customers regarding the ongoing investigation into Plaintiffs, which resulted in a loss of business.  (ECF No. 1 ¶ 93.)[25]

The Remaining Moving Defendants argue that any information released by the OCPO was relevant to the charges brought against Plaintiffs; therefore, Defendants were "acting well within the scope of their official duties" and are entitled to qualified immunity.  (ECF 37-1 at 41.)  Defendants cite to *Brayshaw v. Gelber*, 556 A.2d 788 (N.J. Super. Ct. App. Div. 1989), in support

---

[25]    As previously stated, the Court cannot ascertain which Defendants allegedly communicated with media outlets because Plaintiffs attribute this alleged conduct to all Defendants.  (ECF No. 1 ¶ 50.)  Accordingly, the Court will not consider this allegation for purposes of assessing NJTCA immunity.  *See supra* note 16.

of this argument.  In that case, the court reversed the trial court's denial of summary judgment finding that defendant, a Deputy Attorney General for the State of New Jersey, was acting within the scope of his duties in communicating with the press with respect to criminal charges entered against the plaintiff.  *Brayshaw*, 232 N.J. Super. at 794–95.  The court in *Brayshaw* held that the plaintiff could not defeat immunity by simply alleging that the defendant's communications with the press were motivated by subjective "bad faith" or "malice."  *Id*. at 795.  Thus, Defendants argue that qualified immunity under the NJTCA can "only be overcome by clear and convincing evidence that the employee knew the information conveyed was false or recklessly disregarded whether or not it was false."  (ECF 37-1 at 41 (citing *Brayshaw*, 232 N.J. Super. at 795–96).)

At this stage, the "clear and convincing evidence" standard is not the standard by which this Court must assess the sufficiency of the Complaint.  *Wilson*, 57 F.4th at 140.  The Court must accept Plaintiffs' allegations as true and assess whether those allegations allow the Court to draw the reasonable inference that Defendants are liable for the misconduct alleged.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *see also Clark*, 55 F.4th at 178.  Construing the allegations in a light most favorable to Plaintiffs, the Court finds that Plaintiffs have adequately alleged that Defendants acted maliciously in their alleged misrepresentations to Level and Square customers.  *See Demetro v. Nat'l Ass'n of Bunco Investigations*, Civ. No. 14-6521, 2019 WL 2612687, at *10 (D.N.J. June 25, 2019) (stating that if the defamatory statement "were, as alleged, a false accusation of criminal conduct, it would be considered defamatory as a matter of law" (collecting cases)).  Indeed, the Court's assessment of immunity in this case is best left to summary judgment after the parties have had the opportunity to develop the record further.  *See R.K.*, 621 F. Supp. 2d at 199 (noting that "New Jersey courts have recognized [that issues of immunity] may be decided at the summary judgment stage more easily than at the motion to dismiss stage"); *see also*

*Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) ("[I]t is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases."); *Independence Twp.*, 463 F.3d at 299 (reasoning that in a "complaint lacking in detailed factual allegations," it is difficult for the District Court to "engage in a meaningful fact-specific qualified immunity analysis").

However, the Court agrees with the Remaining Moving Defendants that the claims against the OCPO should be dismissed given that the NJTCA dictates that a "public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Ann. § 59:2-10. Even if the OCPO's employees engaged in willful misconduct, the OCPO cannot be held vicariously liable. *R.K.*, 621 F. Supp. 2d at 200 (holding that a public entity cannot be liable for acts of public employee constituting crime, actual fraud, actual malice, or willful misconduct).

Therefore, with the exception of the OCPO and Scalabrini, the defamation claim and civil conspiracy claim (related to defamation) against Defendants Scharfenberg, Heisler, Shadiack, and Malinowski shall proceed, but only as they relate to statements made to Level and Square customers as part of the Stecz investigation and prosecution. As stated above, any allegations pertaining to the RREM application case and Stocketta case are dismissed without prejudice.

## IV.   **CONCLUSION**

For the foregoing reasons, and other good cause shown, Scalabrini's Motion to Dismiss (ECF No. 8) is **GRANTED**, and the Remaining Moving Defendants' Motion to Dismiss (ECF No. 37) is **GRANTED in part** and **DENIED in part**.

An appropriate Order follows.

Dated: July 8, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE